Benny Keith Company v. Dining Alliance v. Foodbuy And we'll hear from Mr. Nobles. Good morning. May it please the court. The question presented by this appeal would be a difficult question for a federal courts examination in law school. It involves. Excuse me. Can anyone hear anything at the back? Sort of. I'm sorry. Even though you're. I can speak up. You do need to speak up and we'll see if the sound will project to the back. I'll keep that in mind. Thank you. Yes, sir. Thank you. I was saying this would be a difficult law exam question because it involves two issues that have nuances that are rapidly developing and not known very well to all lawyers. A lawyer of my generation was not taught about limited liability corporations in law school because they were not invented until 1978. And they didn't proliferate until this century. This is a 21st century business organization that has been very successful as a vehicle for raising private investments and private equity. It would be a nightmare for me to have a final exam that I hadn't studied for. People who are practicing law sometimes find themselves in circumstances where they have new questions. This is one of those. Mr. Nobles, with due respect, you're at a very fancy law firm. You're a very experienced and capable practitioner. We don't need excuses. And you're not. We don't need any excuses from you, but more more than that, from the lawyers who created this pickle for the district court. Thank you, Judge Jones. And I recognize that the district court was in a pickle, as were the parties. Well, when you litigate a case for nearly two years, when your previous counsel should have known that there was no diversity jurisdiction, the ire of the court was pretty understandable. And with respect to the district court, we all understand that and explained that there were mistakes. The couple of keys, though, is that this was not understood to be a diversity jurisdiction case only. There is a federal question in the case until the settlement of that part of the case, Minnie Keith, who's not here today, and Dining Alliance, my client, settled in January of 2022. OK, here's the question I've been having, and I'm not going to wait any longer. Let's assume, arguendo for the moment, that the district court did have jurisdiction to enter a dismissal with prejudice. You're still arguing they should have done something lesser, but your argument is without prejudice is what they should have done. Well, that's what the judge would have had to do anyway because of lack of jurisdiction. So that's not a sanction at all. Why not money for attorney's fees spent on all this goo of having to deal with these jurisdictional questions? Well, attorney's fees would be a different question than the merits dispositive sanction that was imposed by Judge Martin. OK, but why not argue that sanction? You can award fees for as a sanction because a lawyer had to spend time on something they shouldn't have had to spend time on. Why not you argue, no, no, no, couldn't do that, only thing is dismiss without prejudice, which isn't a sanction. So assuming, arguendo, that the court had all the jurisdiction and that you all deserve a sanction of some sort, which you clearly do, what is that true sanction? There were sanctions imposed on the lawyers who tried to do this. Yeah, $250. I'm talking about a real sanction. And disbarment of their prohibitive action. Cost of a good dinner in New Orleans. OK, I'm talking about a sanction on the client for the time spent by food buy, which I think was more than $750, dealing with all of this stuff. So please answer that question. The case dispositive sanction is inappropriate because of the absence of bad faith, the absence of a finding of bad faith, the findings, in fact, of negative... What is the lesser sanction that would be appropriate, Mr. Nobles? You're not answering my question because you don't want to, I don't think, but please do. I'm not an advocate for the other side, but I could suggest that a reasonable monetary sanction wouldn't have led us here today. A reasonable monetary sanction would not encompass all of the fees that were incurred in the case because this cause of action that Dining Alliance has is a cause of action that it could have alleged in state court. Well, wait a minute. You did allege it in state court, apparently. You have a case pending in North Carolina today. Without service, but that's to preserve our clients' rights against limitations issues. Well, and so what good is this sanction at all? This sanction? A monetary sanction for a reasonable amount of... No, this dismissal with prejudice you say is merits-based. If you've got another, if we affirm this, then you're just going to go forward in North Carolina and this sanction is totally worthless, right? That's not our position, Your Honor. Well, what is your position? The state court litigation is there because our clients' rights have to be preserved. Is this merits-based or not? The sanction is merits-based. All right. Will that preclude the North Carolina suit or not? There's an argument that our reply rephrases that it's not merits-based because it was entered without reference to the merits of the case. It was entered with reference to two orders, December 1st, December 16th, that asked our party, our client, to show the diversity of all their citizens. And the answer to that question is we can't tell you all of them? That is not a tenable response, which is why your preceding lawyers, I take pains to emphasize that, got sanctioned. If they were anonymous, does that mean they're members of the mafia? Does it mean they're Russian oligarchs? No. I don't know. But you could have said, here, Judge, we're giving you this information under seal. You didn't trust that. You didn't think of it? It wasn't possible for us to provide that information under seal because we don't possess that information. Well, then you should have – then the preceding lawyers should have thought of that before they filed a third-party claim without diversity or before they allowed the court to proceed. With respect, the client does not possess that information. The client, I believe – Well, then the client can't file a case on diversity in federal court. End of story. The Dining Alliance didn't choose the forum. Benny Keith did. Well, Dining Alliance has chosen to sue in North Carolina against Food Buy on precisely the same grounds. As a result of mistakes with understanding about LLC diversity jurisdiction, not bad faith, no finding of bad faith, no finding of egregious conduct that would require anything more than an appropriate Rule 11 sanction, perhaps, as the Willie v. Coastal Corp case involved. There was a monetary fine in that case. Well, as soon as your client figured out that, oh, now there's a settlement. We've got to show diversity, and we can't find – we don't know if we have diversity. Why not get with Food Buy and dismiss the case without prejudice at that point instead of continuing to sort of punch back on the district court and not do what the district court – The district court talked to you all about Donde for pages. You all didn't mention Donde in your briefs. Donde is a huge deal in the Northern District of Texas, and it was a big deal to the judge, and you all completely didn't comply with it, and that was not well done. So why not just – you all meaning your predecessors and whatever – why not just at that point, but having stayed in and kind of swiveling in and out, whatever, you leave yourself – you leave your client where they are if they're not willing to do what they're supposed to do. I think Aaron Fox is the law firm that should be named here because they are the ones who totally goofed up. Okay, you wish. Why – I just don't understand this. I don't understand why they're kept on being this punching back and forth, particularly with Judge McBride as your judge. And then it was Judge Pittman, but it started with Judge McBride, Your Honor. Well, it could have been Judge O'Connor because the original case was settled in O'Connor's court, and this goes against – Well, whoever the judge was – Well, this goes against Benny Keith because nobody notified that this was a follow-on to the original case. Okay, but the bottom line is why not just immediately stop it instead of continuing on? Can you answer that? Your Honor, the subject matter jurisdiction was raised in a motion to dismiss filed by Food Buy that was pending while this – Why not just agree to it and move on? Well, we – and with respect, Your Honor, in our first status report, we acknowledged that there are Delaware entities that defeat diversity before the settlement. This is in our response to the December 1st order. That response pointed out that there's no diversity, but there are federal questions in this case, and as a matter of supplemental jurisdiction, the court can retain the case. You didn't have supplemental jurisdiction against Food Buy. It was purely diversity, correct? Apart from the federal questions that were brought by Benny Keith. I understand that. Yes, that is correct. And so the court would have only had supplemental jurisdiction, right? That's correct. Okay. And besides that, Aaron Fox and the general counsel had reason to know that Dining Alliance – we even call this Dining Alliance, Inc. as the appellant, but it's Dining Alliance, LLC. And your lawyers knew about that at least six months earlier when they put it in a little footnote, and then occasionally they'd file a pleading that said Dining Alliance, Inc., and then one that said Dining Alliance, LLC. It looks like they were deliberately hiding the ball after they had found their mistake out. And I understand what the district – I've read the transcript of what the district court found, Mark Pittman, but I'm a little blunter than he is. It's hard not to think that they were deliberately playing a shell game. There's no finding that they were. The facts are that they were not. The facts are that they were mistaken. Counsel fell on their sword and said it was my fault, it was a mistake. Of course, because they still want to represent that client. But the point is everybody has known in diversity that all the members of a partnership have to be identified for at least 10 years, longer than that. An LLC is functionally a partnership. Nobody should – I mean, it's just – There are a number – and with respect, Your Honor, there are a number of federal cases, including the 11th circuit case that we signed in our appellant's brief, that involve a similar problem. That was several – that doesn't make it excusable. If you were – if they had been a two-lawyer shop from Marshall, Texas, we might be a little easier on them. But this is a nationwide law firm with very sophisticated work. In defense of Aaron Fox, they did it because it was the right thing to do, not because they were trying to keep business from their client. It was the right thing to do to tell the truth to the court. As a result, Judge Pittman, in his initial order, said that I don't – I'm not saying this was intentional. It was negligence. And Aaron Fox admitted that it was negligence. So there's no finding of bad faith, no finding of condemnation of conduct. But I'm still wondering. Here you are appealing this sanction on one side, but on the other side you're saying we think there's an argument that it's toothless. So now that Food Buy has spent hundreds of thousands of dollars or whatever it is in attorney fees uselessly in the federal district court in the Northern District, we're going to make them spend a whole bunch more money in North Carolina. Is that what's – is that plausible? Respectfully, that's not what's happening. There's been a petition filed in state court in North Carolina to preserve the rights of the client against limitations. This appeal doesn't suspend limitations. This case was dismissed with prejudice, and we – Right, but if we affirm, what happens next? I'm still not sure I understood. You're going to serve them. And then? Well, I'm not – I'm not trial counsel, and I don't think anyone expects that that will happen, because we are here to argue today that there is no bad faith, there is no condemnation. One thing I always knew as a lawyer is I might win, I might lose. Have you not contemplated both of those possibilities here? I'm not sure I understand your question, Judge. Well, you're acting like, well, we're going to win this, so it doesn't really matter what we did in North Carolina, but you might lose, and then what happens? That's the question. You certainly can't control the outcome. The point I would like to make is that all of this conversation is about mistakes by the lawyers and not by the client-dining alliance. And for those reasons, we would respectfully request that the court reverse the judgment of the trial court, the district court, and dispose of the case in any proper way but not by affirming an unjust sanction. Thank you very much. All right. Mr. Schneider. May it please the Court, on that last question raised, what are they going to do next, they were quite frank in their reply brief on that. I would direct the Court's attention to the reply brief, page 27, note 18, where they say, quote, no matter how this case ends, dining alliance's state court lawsuit should go forward, period, end quote. That's an indication they have every intention, no matter how this case ends, affirming or otherwise, they intend to proceed. Okay, so then that's why I wonder about you all. I know why you want to argue that we should affirm, but why wasn't there in the alternative, if you send it back, we should get our attorneys' fees at least for all the time we spent on all the goo? Well, I guess that would be up to Judge Pittman to determine on remand, but we made the same argument your Honor pointed out, Judge Haynes, that this is no sanction at all. So if this Court were to determine that Judge Pittman was somehow errant in not considering and applying a lesser sanction, although the record is replete with indications as to why he did not do that. But I don't see how, and please tell me the site where he talked about money and why money wouldn't be a lesser sanction. He doesn't talk about money, your Honor. Yeah, that's why I had trouble finding it. No, I understand, so don't look for it. But what he did was he gave five warnings. They say he warned them one time, and they refer to the second order of December 16, which does say twice that you may have your claims dismissed with prejudice. The order before that said the same thing, and then three orders after that warn them, warn them, warn them. And so in this circuit, warnings are lesser sanctions. So are second opportunities. They were given a second and a third opportunity. Those count as lesser sanctions. So after five warnings and two opportunities to snap to and to give the court what it asked for, I assume he thought there's nothing I can do, there's no monetary sanction here, can't get inside his head, but he was appropriately determined after that. But if they can pursue the case in North Carolina, then it wasn't a sanction. Well, we disagree with that. But that's what they intend to do, apparently, from the footnote I just read you. But we disagree with that. I mean, I assume we would have to. Or attorney's fees. I guess that's your counterclaim at the end. But the problem is if they somehow prevail in North Carolina, then you don't get attorney's fees on your counterclaim, but you could get them on this sanction. And that's why it's just odd to me. Usually lawyers are asking for their fees. Well, what happened happened, and if there were a remand, and I'm not suggesting there should be, we obviously believe there should be an affirming of the trial judge's sanction, that would be, I suppose, something that would be taken up. But, again, under this court's precedent, with those five warnings and two opportunities, and also an express finding that Judge Pittman considered lesser sanctions and determined that they would not serve the interests of justice, because these people are dug in, they are not going to give this information, they have decided unilaterally that. But money is a sanction. I mean, in my experience, people don't like paying money that they wouldn't otherwise have to pay. So I don't understand why that wasn't considered. Well, I guess by that logic, you would always have sort of interim sanction short of dismissal with prejudice. Was Foodbuy pressing? What did Foodbuy precisely request in the motion to dismiss? Did Foodbuy ask for the same? This was the court's response, wasn't it, or not? Yes, Your Honor. It gets a little confusing because there was sort of a collateral track where Foodbuy had filed a 12B1, and we did ask for dismissal with prejudice at some point in that briefing, and then Judge McBride asked the parties to submit additional briefing on the issue of supplemental jurisdiction. I believe there we said dismissal with prejudice and alternative sanctions or plus sanctions, meaning monetary. So we did ask for that, and he declined to do so and just dismissed with prejudice. Did you ask for a finding of bad faith? No, because that's not the proper standard. That is just not the proper standard. The proper standard is the two-part test under 41B cases, and there's ample authority in this court that says if the dismissal is the equivalent of a 41B dismissal, And that's the, I'm trying to think, it's the case that, let me get there. Here we go. The Berry case and the Milan case both say that, that if the dismissal is the equivalent of a 41B dismissal, then it should be treated as a 41B dismissal and you apply the two-factor test. This isn't even the equivalent of a 41B dismissal. This is clearly a 41B dismissal because it is a dismissal with prejudice for violating court orders. What they do is they commingle the lawyer sanctions where the judge expressly stated, I am going to invoke my inherent authority and I'm going to find that you violated local rule 83.3B, and that's clear from the record of the show-cause hearing on January 28th. And then separately on the next page he says, and as to dining alliance, I'm going to sanction dining alliance for violating court orders. And then you take it from that point forward and you see that the district court, the only time he talks about inherent authority is with respect to the lawyer sanctions. The lawyer sanctions weren't appealed. They file a 59E motion, and this is important. In their 59E motion, they advocate the application of the 41B two-factor test. They tell the court, this is the proper test. All the cases they cite in their 59E briefing are 41B cases. The court then in the March 8 order ruling on the 59E motion applies that test, as they suggested he should, and now they criticize him for applying the wrong test. That's also called invited error, and it precludes review of this court of that particular ruling. But he clearly applied the proper two-part test under 41B because this is a 41B dismissal. So bad faith doesn't come into play. And there's authority, the in-rate taxitaria case that I believe, Your Honor, was on the panel. There is clear separation between the test under 37B, bad faith, and it relates a multi-factor test that has bad faith and willful abuse of the judicial process. You look at the factors there, and it's the law funder test, the law funder factors, and you see that they apply to discovery abuses between the parties related to claims, not this situation where it's a jurisdictional order that the court issues sua sponte. Again, it fits directly into 41B. So the two-factor test applies. And Mr. Noble mentioned the fact that their position is that this was entirely attorney misconduct, not misconduct of the party. How does that fit into this? That's not at all the case. In fact— Well, so are you disagreeing with it factually or legally? I'm disagreeing with it factually, Your Honor, and I would direct the court to ROA 3947-48 on that question, and that is a January 7, 2021, declaration from one of the Aaron Fox lawyers where he describes what Aaron Fox did upon receiving the orders of December 1 and December 16. They turned to their client, Donning Alliance, and their in-house counsel, Mr. Corrigan, and they say, You've got to help us. Please get us this information. And then Mr. Corrigan apparently turned to Bregel Sagemont, one of the owners through all of these limited partnerships, and said, Hey, can you give us some of this citizenship information? Bregel said, Well, some of it's private, and I assume that it looks like Mr. Corrigan just accepted that on his face  That was all the client. The client was responsible for gathering the information from its affiliated entities, including Bregel Sagemont. That was all on the client, Mr. Corrigan. But presumably it was the client that said, We're not going to carry through. Oh, sure. That's the way it appeared. They were not going to offend, I assume, Bregel Sagemont for perhaps financial reasons. They allowed Bregel Sagemont to determine what it would produce under these privacy issues, which I don't quite understand, to Your Honor's earlier point. I mean, we're talking about names of people. We're not talking about Social Security numbers or anything like that. And they just took that at face value, and that flies in the face of the federal jurisprudence, the Belleville Catering case, for example. You can't hide citizenship or diversity information from the judiciary. You can't. You've heard us talk about that, so you don't need to orate about it also. Fair enough. Please. Fair enough. So, anyway, the proper test was applied. And I'd also direct the court to NRA Taxitary, I think it's footnote four, where it talks about the court's selection of the proper test for sanctions. The district court is reviewed under an abuse of discretion standard. So if it's not precluded because of invited error, it's reviewed under an abuse of discretion standard, and it's hard to find that Judge Pittman abused his discretion by applying a standard that they repeatedly encouraged him to apply. Let me turn briefly to the jurisdictional issues. I'm not sure if that piqued the panel's curiosity, but I want to say two things there. First... Well, there is a circuit split, so we're... There is a circuit split, but I don't even know if you can get there. That may be the easier path to determine what the Fifth Circuit would do. And there are two cases that we've directed the court to that indicates the Pena case and the Fuller v. Hibernia Oil that subject matter jurisdiction is not required to issue litigation ending sanctions, or in the Hibernia case, a preclusive sanction that precludes future claims related to the oil and gas properties at issue. So we feel like those cases give a strong indicator, and I understand they're persuasive authority, they're not published, but give a strong indicator of what this court would do in terms of joining the circuit split. But there's two other ways to empower the district court to issue the litigation ending sanctions. The first one is subject matter jurisdiction existed at the time he dismissed the claims. Now, we can get there two ways, as the panel knows. The first is through original diversity jurisdiction between Benny Keith and Dining Alliance. Dining Alliance says, we resolved that claim. It's a closed issue. That's not true. The information they provided to the court was not only woefully inadequate in terms of all of the owners, but the information concerning the anonymized limited partner is in a declaration of Bregel Sagemont's general counsel. It's incompetent. It's based on hearsay. It is inaccurate, as we learned last week when they corrected the record through judicial notice. It's just unreliable. But turning to maybe the more important issue is Dining Alliance says in their opening brief, quote, the district court did not exercise supplemental jurisdiction over this case, period, end quote. There's no support for that, and the real record shows the opposite, or the correct reading of the record shows the opposite. When opposing Food Buy's 12B1 motion, Dining Alliance adamantly argued that the court has supplemental jurisdiction under 1367A based on the Benny Keith federal claim. They staked out their position on that, and they criticized Food Buy for pestering them and wasting the court's time with this whole jurisdictional inquiry. But that appears in the record at ROA 3235 through 39. So are you arguing against the position that you formerly took? Well, we lost, Your Honor. That's the point. It doesn't matter because the reason we lost, the prevailing position is— Well, jurisdiction is jurisdiction, right? Sure. Obviously, this court can take a fresh look at it, but the prevailing position turned out to be the one that Dining Alliance took because the court never ruled on the 12B1 motion, so it's implied denied, if you will, and that was the state of affairs at the time the court dismissed the case. And then Dining Alliance even said after the dismissal of the settled Benny Keith federal claims that the court still had discretion under 1367C to retain supplemental jurisdiction, and that's at ROA 3916. That's in one of these briefs that— Well, then why were you wasting the court's time? Well, there is an issue under 13— I mean, if now you're arguing that the district court had supplemental jurisdiction, I just—you're dissolving your argument. No, well, Your Honor, respectfully, we took—there is a question about whether if indeed, and this is an open question, of course, diversity existed at the outset. Let's say hypothetically it didn't. It's still an open question. Under the 16— How could it have been an—I'm annoyed about this case from the very outset because Benny Keith, not your client, filed to enforce a settlement in another judge's court in the northern district, and for some reason nobody ever bothered to check the box. That is disgusting. Passing that, Dining Alliance had already reorganized. It was no longer in ink. Therefore, there was no diversity jurisdiction to begin with. I can understand your honors and orders. Is that correct or not correct? Well, the— Then there's no diversity jurisdiction. Assuming the information is correct regarding this anonymous person. Yes, Your Honor. Assuming that's correct. Well, if they wouldn't provide it, then they haven't borne the burden of proof. End of story. Agreed. It's not just a question whether factually this unidentified person was a domiciled in Texas. It is that if they do not—that someone has to prove diversity jurisdiction. Okay. So, there was no jurisdiction. Now, later on they amended and they put in some federal claim, right? Yes, Your Honor. My understanding was that then they settled the federal claim, at that point leaving only the third-party claim based only on diversity. Based only on— But now you're arguing there's supplemental jurisdiction. I'm arguing, Your Honor, that the state of the record, and we were—you can read our briefing. Okay, but it seems like if Judge McBride thought he had supplemental or should exercise supplemental jurisdiction, all this wouldn't have happened. And I'm sorry that he's passed away, and I respect him deeply. But if he was exercising supplemental jurisdiction and later Judge Pittman exercising supplemental jurisdiction, why would we walk down this path to find out where this person, this unknown person is from in Texas and so on, whether they're a resident or citizen or not? That issue developed over time kind of collaterally with the diversity inquiry. And, again, the perplexing question is in the Fifth Circuit, and it's the lead case and Judge McBride asked for a briefing on it, the 16 Front Street case, is if, in fact, diversity didn't exist at the outset in the time that hadn't been established, even if that's the case, though, hypothetically, can supplemental jurisdiction attach late through the addition of a federal claim? That was an open question. He asked for a briefing, and we effectively sort of shrugged our shoulders, weren't quite sure how that could be read. And so we didn't, I mean, unfortunately, we couldn't answer that question definitively. But, Judge Jones, I understand. I'm just saying that is the state of what happened is— So you're saying he didn't—we argued he didn't have jurisdiction, but, hey, in order to uphold this sanction, for whatever good it's worth, we'll say he did have jurisdiction. We don't need that, Your Honor. I was—that's right. We don't need that. I'm just saying he still—he did—the state, because he denied our 12B1, and the argument opposing the 12B1 is that supplemental jurisdiction attached under 1367A. Okay. But, yes, to that point, the other thing that I want to hit real quick on jurisdiction is there are no cases like this, except save maybe one, and that's the Davis v. Clouette and Peabody case that we cite, that indicates when a court is exercising its jurisdiction to determine jurisdiction, whether it might have sufficient authority to issue litigation-ending sanctions. And it stands to reason, logically, that it would, because that has nothing to do with the merits. So if you're looking at it through a willy prism, if you will, and you're saying, okay, these sanctions, are they collateral or are they meritorious? Well, if it's related to the court's efforts to determine its own jurisdiction, it has nothing to do with the merits. So it falls squarely in line with even the Second and Third Circuit's minority position in the split. So that's a third pathway to get to empowering Judge Pittman to issue these— So you're saying we can dance around the split by saying this is just about jurisdiction? If you want to characterize it as a dance— An act of jurisdiction. I don't know if it's a dance. It's an interesting issue, and the Clouette opinion indicates that that could be the case. Now, those weren't the facts of that case, but it's never been decided, and, again, logically it makes sense because you're not ruling on the merits when someone doesn't comply with your efforts to determine your own jurisdiction and you issue a litigation ending sanction. Very similar to this case. I'd also direct the Court's attention to the Wonders Trust case out of Florida, which has very similar circumstances to this case. A court trying to determine its own jurisdiction was thwarted by the party that it ultimately sanctioned through litigation ending sanctions. Thank you. All right. Thank you, sir. All right, Mr. Nobles, we will allow you to argue without interruption. Thank you, Your Honor, and I don't mind the questions, but I would like to focus on two issues that the panel has acknowledged that weigh in favor of Dining Alliance on the issue of a death penalty sanction against a client for lawyer conduct. This is a case in which Judge Pittman faulted the lawyers for their failure to provide all of the information about the citizenship of every party, every member of the LLCs. The statement of citizenship prepared by Dining Alliance provided information about everyone who is not anonymous as a matter of contractual right and as a matter of state statute in many states. In our appellant's brief at page 50, we cite the Kinshue case and the Berkshire case, both of which deal with the problem of anonymity. And it is a problem. Federal courts can't entertain cases with anonymous parties in diverse cases. We didn't understand that. That was a lawyer problem, not a client problem. And so the client is not the person upon whom this penalty should be visited upon their head, in the words of Texas jurisprudence, Trans-American Natural Gas v. Powell. This court has adopted that standard. For a sanction to be just, it can't be excessive, and it has to be visited upon the head of the offender. In this case, if the court wanted to assess a monetary sanction, that would be fine. But a death penalty sanction isn't proper under the court's inherent power, and it's not proper under Rule 41B either. Opposing counsel cited the Berry case. Berry holds that a death penalty sanction is not appropriate unless there is a clear record of contumacious conduct or delay. There's no contumacious conduct here. I'd refer the court to ROA 4200, where Judge Pittman said this was not intentional conduct. It was negligence. At ROA 4357, he again wrote that the Dining Alliance was ordered to provide certain information that it refused and still refuses to provide. That's intentional. You know you argued monetary sanctions are inappropriate. I'm sorry? In your brief, you argued monetary sanctions are inappropriate. Well, we have never had to make that argument to this court except in that brief. Monetary sanctions are something that's within discretion of the district court. If the district court had awarded monetary sanctions, I'm sure that we would not be here today. The reason we're here is because a merits dispositive sanction was imposed for conduct by lawyers that was undoubtedly not merits related. As opposing counsel just admitted, the diversity issue is not a merits question. The client was ordered to produce information about the citizenship of every member. That has nothing to do with the merits of this case. And Judge Pittman, in his orders at ROA 4200 and 4357, twice said that this sanction is because they didn't give me all the information that I wanted. They didn't give me information about the anonymous LLC members. And under federal law, courts have recognized that that is a reason to dismiss the case because you can't establish your burden to prove diversity, but it's not a basis for deciding the case on the merits. Put most simply, this is a case in which mistakes were made, particularly identified two particular orders, December 1st, December 15th, 2021. Both of those orders have nothing to do with the merits of the case. Our counsel's response to orders that provide very quick statements of citizenship gave the best answer that they had and the best answer that they could give because they can't provide information about all the anonymous members. And the final point is that it was not a material issue. If anyone was not diverse as to food buy, if anyone was a Delaware citizen, that destroys diversity. We weren't trying to avoid the consequences of a lack of diversity. We admitted that there was a lack of diversity. We found the merits of our case decided, even though we engaged in no bad faith conduct on the part of Dining Alliance. And I would ask that the court either reverse and render judgment or remand to the district court for what the court considers to be a just result. But this result is not just. Thank you. All right, sir. Thank you.